* * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the alleged injury on or about August 10, 2005, and at the time of the alleged contracting of and disability from the alleged occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, the defendant-employer *Page 2 
employed three or more employees, and the employee-employer relationship existed between plaintiff and defendant-employer.
2. The carrier on the risk is Liberty Mutual Insurance Company.
3. Plaintiff was absent from work in his employment with defendant-employer from January 17, 2006 through July 31, 2006.
4. United Parcel Service in North Carolina requires that a package car driver be able to lift and handle at least 70 pounds unassisted to perform that job. United Parcel Service in North Carolina will not accommodate an employee with physical limitations which prevent the employee from performing the regular duties of a package car driver unless the employee's limitations are from an injury accepted by United Parcel Service and Liberty Mutual Insurance Company for payment under workers' compensation. That is, United Parcel Service in North Carolina will not provide light duty work for its employees whose physical limitations prevent them from returning to their regular jobs as package car drivers unless the employee's workers' compensation claim has been accepted for payment.
5. In the event this claim is found to be compensable, plaintiff was temporarily totally disabled from January 17, 2006 through July 31, 2006.
6. Plaintiff's average weekly wage is sufficient to generate the maximum compensation rate on the date of his alleged injury.
7. The stipulations contained in the parties' pre-hearing agreement, dated December 4, 2006, the stipulation with respect to temporary disability, dated February 12, 2007, and supplemental stipulation with respect to average weekly wage, dated March 29, 2007, are incorporated fully into this record.
 8. The following were entered into evidence as Stipulated Exhibits: *Page 3 
 a. Industrial Commission Form 18;
 b. Document filed with the Industrial Commission on November 14, 2006;
 c. Industrial Commission Form 61;
 d. First Report of Injury or Illness;
 e. Industrial Commission Form 22;
 f. Medical record from Theodore M. Pitts, M.D.;
 g. Durham Regional Hospital records for January 18, 2006 admission; and
 h. Durham Regional Hospital records for February 22, 2006 admission.
 * * * * * * * * * * *
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant-employer in August 2005 as a package car delivery driver. He had been employed by defendant-employer for 23 years and employed as a package car delivery driver for 17 years.
2. In August 2005, plaintiff was 43 years old. He is six feet two inches tall and weighed about 235 pounds.
3. Plaintiff's duties as a package car delivery driver included driving defendant-employer's truck to deliver and pick up packages on his assigned route. Plaintiff generally worked eight and one-half to nine hours per day, five days a week. The packages plaintiff handled were from a negligible weight to 150 pounds. Plaintiff's assigned route for 17 years has included mixed Durham business and residential areas. His deliveries averaged 115 to 120 stops per day. He also had roughly twenty additional stops to pick up packages. Some stops required getting in and out of *Page 4 
the truck multiple times. Plaintiff thus was getting in and out of the truck to deliver and pick up packages up to 200 times during a typical work day.
4. Plaintiff was out of work from January 27, 2005 through July 11, 2005 because of a back injury. In July 2005, plaintiff returned to work as a package car driver.
5. Defendant-employer uses a number of different vehicles for its package cars. The package car which plaintiff operated for more than 10 years was equipped with a seat which retracted so that plaintiff could extend his legs while operating the vehicle. When plaintiff sat down in the seat in this vehicle, he could move the seat backward and extend his legs comfortably when operating the gas pedal, the brake and the clutch in his five-speed standard transmission truck.
6. On August 10, 2005, plaintiff's normal vehicle had been sent to the body shop for painting and thus was out of service. Plaintiff instead was assigned to a vehicle with a smaller cab area. The seat in this vehicle would not retract or move backwards to allow ample room for plaintiff's legs. The steering wheel in this vehicle actually touched plaintiff's lap. On August 10 and August 11, 2005, while using this replacement vehicle, working in unusually cramped conditions, plaintiff constantly had to twist his legs and would strike the top of his knees on the steering wheel to maneuver his legs to operate the gas pedal, the brake and the clutch and to get in and out of the seat as he delivered and picked up packages on his route. Plaintiff had to brake hard.
7. Plaintiff was not having symptoms in his knees when he reported to work on the morning of August 10, 2005. After delivering packages for about three and one-half hours on August 10, 2005, however, plaintiff's right and left knees stiffened up, plaintiff observed swelling in the knees, and he experienced pain in both knees of a nature that he had not experienced before.
8. Beginning on August 12, 2005, plaintiff was re-assigned to a truck comparable to the truck he usually operated with a seat which retracted and left sufficient room for plaintiff to use *Page 5 
his legs comfortably while operating and exiting the vehicle. Plaintiff, however, continued to have the swelling and pain and stiffness which he had first experienced on August 10, 2005.
9. Plaintiff was out of work on vacation the week following August 12, 2005. The pain and stiffness in his right and left knees, however, persisted and continued after he returned to work and until surgery was performed on his knees in early 2006.
10. Before August 10, 2005, plaintiff was not having the pain, stiffness and swelling in his knees he experienced beginning August 10, 2005. Through the previous years, however, plaintiff had experienced some discomfort in his knees and other areas of the body associated with the physical activity in his work.
11. Defendant-employer had notice of plaintiff's injury to his knees by at least August 16, 2005. This is acknowledged in the First Report of Injury or Illness completed by defendant-employer's District Health and Safety Manager, Delana Gray, dated May 12, 2006. This report stated that the "Date Employer Notified" was August 16, 2005 for a "Date of injury/illness of August 10, 2005 to the knee." The materials the "employee was using when accident or illness exposure occurred" was described as a "package car cab", the activity in which the employee was engaged was described as "getting in and out of seat to make deliveries and do pick up," and the circumstances were described as "getting in and out of seat in package car cab that was too small caused injury to both knees."
12. The only physician who has seen and treated plaintiff for the painful condition in his knees beginning August 10, 2005 was Dr. Theodore Pitts. Dr. Pitts is a board-certified orthopedic surgeon who practices in Durham. Dr. Pitts first saw plaintiff on August 16, 2005, when plaintiff was out of work on vacation. Plaintiff was then focusing on the right knee. Dr. Pitts prescribed an anti-inflammatory medication at this time. *Page 6 
13. On September 13, 2005, plaintiff again was seen by Dr. Pitts complaining of pain in both of his knees. Dr. Pitts observed that the anti-inflammatory plaintiff was taking was helping some but that his "knees are still bothering him." Dr. Pitts noted that plaintiff "remembers having to use a smaller truck which required a lot of heavy braking at his job and he twisted his knee. Then had a gradual onset of increased pain and swelling and that is how this came about." Dr. Pitts injected both knees with a steroid medication on September 13. When Dr. Pitts saw plaintiff on October 6, 2005, plaintiff told Dr. Pitts that he had had knee pain off and on for years but this had become worse in the last few months and again explained that "he was put in a truck that was too small. He had to brake hard. That seemed to aggravate his knees." Dr. Pitts continued to suspect internal derangement or, in other words, torn menisci in both knees.
14. Following completion of MRI studies on October 15, 2005, Dr. Pitts and plaintiff discussed arthroscopy for diagnostic as well as treatment purposes.
15. Plaintiff decided to have arthroscopic surgery. Accordingly, an admission history and physical was completed by Dr. Pitts on January 11, 2006 for plaintiff's right knee surgery scheduled for January 18, 2006. Dr. Pitts noted that the pain in the right knee for which surgery was scheduled had begun in August 2005.
16. On January 18, 2006, Dr. Pitts performed surgery for plaintiff's right knee. The post operative diagnosis for the conditions addressed at surgery was right knee tear of the lateral meniscus, synovitis, osteoarthritis and medial and lateral suprapatellar plica. The arthroscopic surgery approach was initially diagnostic and then for treatment purposes. Dr. Pitts removed scar tissue and smoothed down the cartilage and removed the parts of the meniscus that were causing plaintiff problems. Plaintiff was seen in Dr. Pitts' office for follow up from this surgery on several occasions in January and early February 2006. *Page 7 
17. Dr. Pitts scheduled surgery for February 22, 2006, for plaintiff's left knee. Following the February 22, 2006 left knee arthroscopic surgery, Dr. Pitts' left knee diagnosis was medial and lateral suprapatellar plicae, osteoarthritis, synovitis and medial and lateral meniscal tears. Dr. Pitts found lots of scar tissue and tears of both the medial and lateral meniscus. He arthroscopically removed the scar tissue, smoothed down the arthritic areas, and removed the small parts of the meniscus that were causing the problems.
18. Dr. Pitts continued to see plaintiff on a periodic basis following this second surgery until he was released to return to his regular work as a package car driver on July 31, 2006. Defendant-employer would not permit plaintiff to return to work unless he could physically perform his full duties as a package car driver. Plaintiff followed a home exercise program during this time to recover his strength and prepare to return to work. Plaintiff was unable to arrange for formal physical therapy because of factors relating to his insurance coverage. Since returning to work on August 1, 2006, plaintiff has not missed work because of his knees.
19. Plaintiff was seen by Dr. Pitts on August 24, 2006, following his return to work. Plaintiff was encouraged to continue on anti-inflammatory medications indefinitely. Plaintiff was to return to see Dr. Pitts in late 2006 for a follow up visit. Dr. Pitts will need to see plaintiff again to state an opinion on whether plaintiff is at maximum medical improvement for the right and left knee conditions and on any permanent impairment.
20. On August 10 and August 11, 2005, plaintiff's twisting of his legs and striking his knees on the steering wheel in operating the package car, caused the meniscal tears and synovitis and scar tissue and aggravated the pre-existing arthritic condition in plaintiff's right and left knees treated by Dr. Pitts and which led to Dr. Pitts' surgeries. *Page 8 
21. The studies recommended and treatment by Dr. Pitts for plaintiff's right and left knees beginning August 16, 2005 were reasonable and necessary to provide relief and reduce the disability from plaintiff's left and right knee injury.
22. In the opinion of Dr. Pitts and the undersigned find as fact, on August 10 and August 11, 2005, plaintiff sustained an injury by accident to his right and left knees arising out of and in the course of his employment with defendant-employer, when the twisting of his legs and striking of his knees against the steering wheel of the package car, while working in unusually cramped conditions, caused the meniscal tears, synovitis and scar tissue and aggravated the pre-existing arthritis in plaintiff's knees.
23. Plaintiff's average weekly wage is sufficient to generate the maximum compensation rate, or $704.00 per week, on the date of his injury.
24. As a result of plaintiff's August 10 and August 11, 2005 knee injury, plaintiff was unable to work and was temporarily totally disabled from January 17, 2006 through July 31, 2006.
 * * * * * * * * * * *
Based upon the foregoing findings of fact, the undersigned conclude as follows:
 CONCLUSIONS OF LAW
1. On August 10 and August 11, 2005, plaintiff sustained an injury by accident to his right and left knees arising out of and in the course of his employment by defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As a result of his injury by accident, plaintiff was temporarily and totally disabled from January 17, 2006 through July 31, 2006, and is entitled to compensation for temporary total disability at the rate of $704.00 per week for 28 weeks. N.C. Gen. Stat. § 97-29. *Page 9 
3. Plaintiff is entitled to have defendants provide all medical compensation arising from his August 10, 2005 injury by accident, including payment for the services of Dr. Theodore Pitts. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. Since permanent partial impairment ratings were not given at the time the record in this matter was closed, plaintiff's right to compensation, if any, for permanent partial disability is reserved for future decision. N.C. Gen. Stat. § 97-31.
 * * * * * * * * * * *
Based upon the foregoing Findings of Facts and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for temporary total disability at the rate of $704.00 per week for 28 weeks. This compensation has accrued and shall be paid in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident.
3. A reasonable attorney's fee of 25 % of the compensation awarded is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to plaintiff's counsel.
4. Plaintiff's right to compensation, if any, for permanent partial disability is reserved for future decision.
5. Defendants shall pay the costs.
 This the 19th day of November 2007. *Page 10 
 S/______________________
 DIANNE C. SELLERS
 COMMISSIONER
CONCURRING:
S/______________________ DANNY LEE McDONALD COMMISSIONER
S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1